ELIZABETH BRADY, administratrix, *vs.* OLD COLONY RAILROAD COMPANY.

Norfolk.    November 19, 20, 1894. — November 28, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Loss of Life — Railroad — New Trial — Negligence — Law and Fact.*

After a verdict for the defendant a new trial of an action against a railroad corporation, for causing the death of the plaintiff's intestate, cannot be granted, unless this court can see that the plaintiff sustained the burden of proof resting upon him to show a want of due care on the part of the defendant, by evidence which the judge, who tried the case without a jury and found for the defendant, was legally bound to accept as conclusive.

A., who was a passenger on a railroad train, was taken ill during his journey, and received some attention from the train hands. When the train reached the station which was the end of its route, the engine stopped at the water standard, which was at the north end of the station platform, leaving the cars alongside of the platform, and all the passengers alighted. The train stopped about two minutes, and then went on to the north for a short distance in order to be switched back upon another track. Nobody saw A. leave the car, and the next that was seen of him he was lying beside the track about thirty-five or forty feet north of the water standard, and some one was then assisting him to his feet. He was much injured, and died about six hours later. His administrator brought an action against the railroad corporation for causing his death ; and the judge, who tried the case without a jury, found for the defendant. *Held,* that it could not be said, as matter of law, that the finding was wrong.

TORT, by the administratrix of the estate of John Brady, for causing his death.   Trial in the Superior Court, without a jury, before *Braley*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that Brady, the plaintiff's intestate, lived in Stoughton; and that, on the day prior to the accident, he had been to Campello, a station near Brockton, for the purpose of obtaining work, and had obtained employment there.

Upon the morning of December 10, 1892, Brady took a train on the defendant's railroad at Stoughton.   He entered the car next the engine, which had smoking and baggage compartments, the smoking compartment being next the engine.   Soon after leaving the station at Stoughton, Brady, who had been standing in the baggage compartment, fell to the floor of the car.   He was picked up by the baggage-master and put in a chair by the open door of the baggage compartment.   He remarked that it was cold.   The baggage-master shut the door, and assisted him into the smoking compartment of the car by putting his hands under Brady's arms.   He seemed unfit to walk, and his feet dragged.   In the smoking compartment he was placed in the corner of a seat next the window, leaning against the window, and two or three times during the run of the train the baggage-master and conductor went and spoke to him, between Stoughton and Campello, leaning over him as they did so.   A passenger on the train from Stoughton to Montello, who sat near him on the opposite side of the aisle, noticed that he turned his head slightly to the window, and then turned it back to a forward position, but noticed no other movement.   The same passenger, after the train reached Campello, went into the seat behind Brady, and, leaning forward, noticed that his eyes seemed glassy.

When the train reached Montello station the engine stopped at the water standard to take water, and all the passengers alighted.   The platform at that station does not extend north of the water standard, and to the north there is only the ordinary gravel of a railroad road-bed.   The only means provided by the defendant for passengers to leave its premises at Montello was to go south of the station to the street which crosses

the track near that point, or to go through a gap in a fence west of the station. All the passengers who left the train at Montello on the morning of the accident walked south and left the station premises by one or the other of the two ways above described.

The train stopped at Montello station about two minutes, and then started north and ran up under a bridge for the purpose of running down on another track to the eastward.

A switchman in the employ of the defendant testified that he went from the tank-house after the train, and got upon the rear platform of the rear car with the conductor of the train at Montello station, and rode upon it up to the bridge, and then alighted and walked back; that he then first saw Brady lying beside the north-bound track about thirty-five to forty feet north of the water standard; and that when he saw him some one was assisting him to his feet. No other train passed up the north-bound track after the Stoughton train before Brady was picked up.

It was further in evidence that Brady, when picked up beside the track in the place above described, had his foot crushed and head bloody; that the injury inflicted was adequate to cause death; and that death did ensue within about six hours.

The trains upon the defendant railroad run upon the left-hand track. At Montello station, from a position at a point thirty-five to forty feet north of the water standard, there is no obstruction to prevent a person looking north or south along the tracks, and nothing to prevent one there seeing an approaching train.

This was all the evidence introduced by the plaintiff bearing upon the question of liability.

The defendant offered no evidence, and asked the judge to rule that the plaintiff could not recover. The judge found as follows: " Upon this testimony I must find that there has been no unfitness or gross negligence or carelessness shown on the part of the defendant or its servants or agents while carrying the deceased as a passenger from the place where he got in to the place of his destination. I find no proof from which I can draw the inference that there has been any carelessness on the part of the defendant corporation or its servants." The plaintiff alleged exceptions.

*E. F. Leonard,* for the plaintiff.

*J. H. Benton, Jr.,* (*C. F. Choate, Jr.* with him,) for the defendant.

ALLEN, J.   This case was tried without a jury, and the judge found for the defendant.   A new trial cannot be granted unless we can see that the plaintiff sustained the burden of proof resting upon him to show a want of due care on the part of the defendant, by evidence which the judge was legally bound to accept as conclusive.   Where the verdict or finding is against the party having the burden of proof, there is always a difficulty in saying that, as matter of law, it should have been the other way.   In this case, it would seem from the bill of exceptions that at the Montello station the engine stopped at the water standard, which would leave the cars alongside of the station platform; and it is stated that all the passengers left the train.   The train stopped about two minutes, and then went on to the north for a short distance in order to be switched back upon another track, Montello being the end of its route.   Nobody appears to have seen the plaintiff's intestate leave the car, and, so far as is disclosed the next that was seen of him was, that shortly afterwards a switchman saw him lying beside the track about thirty-five or forty feet north of the north end of the platform; and some one who was not a witness was then assisting him to his feet.   He was much injured, and died about six hours later.   The circumstances of his receiving the injury were not more particularly disclosed, and perhaps could not be.   The negligence now relied on is, that the passenger during his journey was obviously sick, and that the defendant ought therefore to have looked after him, to have helped him out of the car, and to have seen that he reached a place of safety, and that it failed to do so.   This argument could be urged with force before the tribunal having to pass upon the question of negligence.   We cannot know exactly how the facts appeared to the mind of the judge, or say, as matter of law, that his finding was wrong.

*Exceptions overruled.*